**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| VICTORY MEDIA GROUP, LLC,<br>    Plaintiff,<br>          v.<br>CITY OF ROSWELL, GEORGIA, *et al.*,<br>    Defendants. | Civil Action No.<br>1:22-cv-00897-SDG |

**OPINION AND ORDER**

This matter is before the Court on cross-motions for summary judgment [ECFs 16 and 18] and Plaintiff's motion for judicial notice [ECF 26]. Plaintiff Victory Media Group, LLC (Victory) moves for partial summary judgment on the grounds that Defendant City of Roswell (the City) improperly enforced a constitutionally deficient signage ordinance and failed to comply with Georgia's Zoning Procedures Law. The City and Defendant Jackie Deibel move for summary judgment on jurisdictional grounds, arguing primarily that Plaintiff's claims are moot, not ripe, and not redressable. After careful consideration of the parties' briefing and with the benefit of oral argument, the Court **GRANTS** Defendants' motion for summary judgment [ECF 18] and **DENIES** Plaintiff's motion for partial summary judgment [ECF 16]. The Court further **GRANTS** Plaintiff's motion for judicial notice [ECF 26].

**I.   BACKGROUND**

Unless otherwise noted, the following facts are undisputed or are supported by undisputed facts in the record. On November 22, 2021, Victory, through its representatives Steve Galberaith and Beth Perkins, met with employees of the City regarding sign permit applications for both commercial and public interest signs.[1] Victory's representatives were prepared to pay the filing fee and turn over the application materials.[2]

During the meeting, City staff reviewed the documents and handwrote at the top of each application "Not an allowed sign type per UDC 10.3."[3] City staff did not input the applications into their computer system, did not accept payment of an application fee, and did not take possession of the paper copies of the application packets.[4] The parties vigorously dispute the import of what happened at the meeting.

---

[1]   ECF 17, ¶¶ 13, 19, 39-49.

[2]   ECF 22-2, ¶ 18.

[3]   *Id.* ¶¶ 20, 25. Section 10.3 of the 2014 Unified Development Code was a City ordinance regulating local zoning rules including the types and dimensions of signs and billboards. ECF 17-2, at 240-43.

[4]   ECF 22-2, ¶¶ 20-26.

The City contends that the meeting did not constitute a submission or denial of the applications. To the contrary, Victory's position is that its applications were accepted, processed, and denied during the meeting.[5] Consistent with its position, Victory filed an administrative appeal pursuant to UDC § 13.12.1 on December 21, 2021.[6] This "appeal" was denied by the City Attorney in a December 27 letter, explaining that because there had been no application, there was nothing to appeal.[7] According to the letter, during the subject meeting the City's staff had simply "informed [Plaintiff] that the applications were for signs that were not permitted by the UDC" but "never denied or rejected" the applications.[8]

This suit was subsequently filed on January 25, 2022.[9] Victory alleges multiple state and federal law deficiencies within the UDC and seeks equitable and monetary relief, including attorney's fees.[10] Section 10.3 was repealed and

---

5   *Id.* ¶ 25.

6   *Id.* ¶ 27.

7   ECF 17-38.

8   *Id.*

9   ECF 1-1.

10  ECF 1-1. While the record is not clear on this point, Plaintiff clarified at oral argument that it was bringing both a facial and as applied challenge to the City's sign ordinance. The Court's analysis applies equally either way because a case must be ripe regardless of the type of challenge. *See Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (applying ripeness

replaced on August 22, 2022.[11] Though the new ordinance is not in the record, at oral argument Victory's counsel conceded that it likely cured the alleged defects in the 2014 ordinance, and that regardless, this suit does not challenge nor target the new ordinance. In response, the City asserts that Victory is barred from bringing these claims by the justiciability doctrines of ripeness, mootness, standing, and sovereign immunity.[12]

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

---

analysis where Plaintiff brought both facial and as applied challenge to City's zoning scheme).

[11]   ECF 18-8, ¶ 37.

[12]   ECF 18-1.

477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the Court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.   DISCUSSION

Plaintiff has referred to the City's justiciability defenses as "superficial or procedural."[13] While the Court empathizes with Plaintiff's desire to resolve this

---

13    ECF 21, at 1.

dispute on the merits, especially because it concerns constitutional rights, the justiciability of a case is of paramount concern, and this Court cannot bypass these basic considerations; specifically here, ripeness.

The ripeness doctrine asks whether a plaintiff has sued too soon. That is because federal courts may not adjudicate when it is speculative whether the plaintiff will actually suffer injury—federal courts must wait until a dispute has sufficiently matured. The doctrine involves consideration of both constitutional (or jurisdictional) and prudential concerns. *Johnson v. Sikes*, 730 F.2d 644, 648 (11th Cir. 1984). "The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Id.* A slightly different statement of the doctrine asks "whether there is sufficient *injury* to meet Article III's requirement of a case or controversy [the constitutional prong] and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court [the prudential prong]." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).

As to the first prong, the Constitution checks federal courts' authority by limiting them to "cases" and "controversies." U.S. CONST. art. III, § 2; *see, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992*); Granite State Outdoor*

*Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003). "This case-or-controversy doctrine fundamentally limits the power of federal courts in our system of government, and helps to 'identify those disputes which are appropriately resolved through judicial process.'" *Ga. State Conference of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir. 1999) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). But, "[e]ven when the constitutional minimum has been met . . . prudential considerations may still counsel judicial restraint." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citing *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986)). The second prong asks courts to look to the development of the case and hardship of the parties if the claim is not adjudicated.

In First Amendment cases, the injury requirement is at its most relaxed, out of concern that free speech may be chilled even before a law or policy is enforced. *Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991). Though no bright-line test firmly shows where this lower threshold lies, Article III undoubtedly still requires that it be met. *Id*. Fortunately, the Eleventh Circuit has already addressed ripeness questions in a series of First Amendment cases involving the signage permit process. *See Digital*, 121 F.3d 586; *Nat'l Advert.*

*Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005); *Beaulieu v. City of Alabaster*, 454 F.3d 1219 (11th Cir. 2006).

The threshold questions presented by the instant motions are (1) whether Victory has shown injury sufficient to meet the necessary First Amendment standard, and (2) if so, whether prudential factors nonetheless advise dismissal.

**A.     There is insufficient injury to meet the Constitutional ripeness requirement.**

*Digital Properties, Inc. v. City of Plantation* guides the Court's analysis. In *Digital*, the plaintiffs were seeking zoning approval for an adult book and video store but stopped short of receiving a final decision before they sued. 121 F.3d at 588. When they went to submit their applications at City Hall, there was some confusion about with whom they should speak. *Id.* at 588–89. The zoning clerk directed them to a supervisor, who in turn expressed doubt about whether the city would permit "such use," but clarified the supervisor had no power to accept applications. *Id.* The supervisor then identified the correct decision-making official and suggested the plaintiffs meet with that person. *Id.* at 589. The plaintiffs left without pursuing that meeting, and subsequently filed suit. *Id.* The Eleventh Circuit found that, in their impatience to challenge the constitutionality of the local zoning ordinance, the plaintiffs had failed to ripen the controversy. *Id.* at 590. "At a minimum, Digital had the obligation to obtain a conclusive response from

someone with the knowledge and authority to speak for the City regarding the application of the zoning scheme to Digital's proposal." *Id.* Injury, even in the First Amendment context, must be grounded in more than a City employee's informal prediction of how an ordinance would be enforced. *Id.*

In *National Advertising Co. v. City of Miami*, the Eleventh Circuit expanded on *Digital*'s reasoning. 402 F.3d at 1340. There, like in the case currently before the Court, the plaintiffs oversaw many signs, including both commercial and public interest messages, and sought permits to erect additional signs. *Id.* at 1337. The city clerks did not issue billboard permits to the plaintiffs, explaining that the proposed size and locations violated the local ordinance. *Id.* at 1338. The Eleventh Circuit held that a clerk's written notations on an application, listing problems such as "too tall" or "in the wrong zone," are not sufficient to render a case ripe. *Id.* at 1340. Following *Digital*, the court reiterated that the lack of a *conclusive* written decision from someone empowered to grant or deny applications precluded finding the necessary injury for jurisdiction under the ripeness doctrine. *Id.* Additionally, the *National* court highlighted why the case was not ripe: "As this case currently stands, a court is incapable of determining if, let alone why, National's applications were denied." *Id.* at 1340–41.

Juxtaposed with *National* and *Digital*, *Beaulieu v. City of Alabaster* provides an example of when the ripeness burden is met. 454 F.3d 1219 (11th Cir. 2006). There, a local political candidate received notice that her campaign sign violated the city ordinance. *Id.* at 1221. She was told, in written notice from the city's code enforcement officer, that she had to rectify the issue in 10 days to "avoid any further legal action." *Id.* She filed suit challenging the City's enforcement of the ordinance, and the Eleventh Circuit found that she had a sufficient injury under Article III, specifically distinguishing *Digital* and *National*. *Id.* at 1224, 1228–29. First, the court noted that *Digital* and *National* did not involve core political speech in the way *Beaulieu* did. *Id.* Second, there was no question that the officer in *Beaulieu* had the authority to enforce the ordinance. *Id.* at 1230. Moreover, the threat of further legal action made the officer's decision "sufficiently conclusive and authoritative" to establish injury. *Id.*

The facts before the Court cleave far closer to *National* and *Digital* than they do to *Beaulieu* and cannot be distinguished enough to warrant *Beaulieu*'s different outcome. First, the speech in this case is functionally identical to that in *National*, where some signs were related to "public interest," but most were commercial.[14]

---

14   ECF 17, ¶¶ 39-49.

Victory's burden to show injury, therefore, is higher than a party engaged in core political speech. Further, there is no evidence that the City's staff made a conclusive, final denial of Victory's applications. Much like in *National*, the City's staff wrote a note at the top of each application remarking that it violated § 10.3 of the UDC—nothing more.[15] As § 10.3 is a long and comprehensive series of sign regulations,[16] these notes are far more vague and more informal than the "too tall" notes *National* held insufficient. Under *National*'s reasoning, a vague note scribbled atop a prospective application simply cannot manifest the kind of injury the Constitution demands.

*Beaulieu* suggests that Victory's case might be very different had it pursued its applications slightly further. Victory alleges that it intended to apply at the meeting and its representatives were rebuffed.[17] Even assuming that was true, Victory did not make any further attempt to officially apply by, for example, returning and *actually* paying the fee and leaving the applications with the City. If the facts suggested that Victory *could not* apply, despite diligently trying to, then a different result might have been appropriate here, but those are not the facts

---

[15]   ECF 22-2, at 14.

[16]   ECF 17-2, at 3, 239, 254.

[17]   *Id.* at 14-15.

presented by the instant case. *Digital*, 121 F.3d at 590 (holding that a plaintiff must pursue its claim *with a certain degree of diligence* before a case or controversy arises.). Without more, Victory's injury is too hypothetical to create a case or controversy. Following *Digital* and *National*, these facts lead the Court to determine that this case does not meet the jurisdictional requirements of the ripeness doctrine.

### B.     Prudential considerations also counsel judicial restraint.

Even if Victory had demonstrated the kind of concrete injury required under Article III, it would still not succeed on the prudential prong of the ripeness inquiry. Under this prong, courts look to whether the record is too underdeveloped to "produce a well-reasoned decision" on the constitutional claims at issue. *Hallandale*, 922 F.2d at 763. Additionally, courts look to the hardship of the parties if the claim is not adjudicated. *National*, 402 F.3d at 1341.

The record here is too underdeveloped to produce a well-reasoned decision on the constitutional claims Victory presses. Victory's claims are premised on the City's reasons for allegedly denying their applications. But the record before the Court does not provide sufficient information for it to adequately evaluate those reasons. A formal, written denial might cross that threshold. A certain pattern of conduct, such as continuously refusing to take possession of the applications, might also provide a sufficiently developed record. But there is no reasonable

inference that can be taken from a single meeting, where no one had authority to speak for the City or make a decision. So, even if Victory had applied, the heart of the ripeness problem is that the record cannot show how, in that single meeting, the City's reason for denial was unconstitutional. It follows then that this Court cannot produce a well-reasoned decision on Victory's constitutional claims.

Finally, regarding the hardship of dismissal, while Victory may endure some hardship,[18] there are two facts in this case that suggest dismissal is not an undue hardship or that the hardship was in fact invited by Victory. First, any hardship Victory might suffer was mitigated when the UDC was repealed and replaced.[19] Victory's counsel conceded at argument that the new ordinance is not in dispute and likely corrected any deficiencies in the prior code. Therefore, the principle hardship Victory will suffer is the lost chance of a favorable judgment, as the equitable remedy it seeks has already been won.

---

[18] Now that there is a new ordinance, Victory cannot complete its application to ripen its claims. Moreover, because of the moratorium imposed shortly after the meeting, Victory was in fact only able to apply, and thus ripen any potential claims, during a brief window. ECF 26-1 (The Court takes judicial notice of the fact that the City adopted a 90-day moratorium on ground sign applications on December 8, 2021. The Court will not consider any argument contained in the motion or subsequent briefing).

[19] ECF 18-8, ¶ 37.

Second, Victory's representatives are sophisticated members of the sign business. Galberaith and Perkins have 57 years of experience between them.[20] They knew, or should have known, that the meeting concerning the signs did not constitute submission of official applications, much less a denial. If they had used those decades of experience to diligently pursue the City's application process and either received a conclusive decision or built a clear record of City obstruction and gamesmanship (which they raised without any record evidence for the first time at oral argument), their rights perhaps would have been vindicated far sooner, and at far less cost. Insofar, then, as Victory's hardship rests on lost recovery of attorney's fees, that hardship was caused by Victory's own haste to sue, not by this dismissal. Therefore, even if this case did manifest a case or controversy, our ripeness doctrine would still warrant dismissal for prudential reasons.

## IV.  Conclusion

Plaintiff's motion for judicial notice [ECF 26] is **GRANTED**. Defendants' motion for summary judgment [ECF 18] is **GRANTED**. Plaintiff's motion for

---

[20]  ECF 22-2, at 1.

partial summary judgment [ECF 16] is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this case.

**SO ORDERED** this 28th day of September, 2023.

Steven D. Grimberg
United States District Court Judge